IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| JON SPURLIN GRAY, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> ANDREW SAUL, § <br> Commissioner of Social Security, § <br> § <br> Defendant. § | Civil Action No. 7:20-cv-00015-O-BP |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Jon Spurlin Gray ("Gray") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), and Supplemental Security Income ("SSI") payments under Title XVI. ECF No. 1. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.   STATEMENT OF THE CASE**

Gray was born on July 18, 1969, has at least a high school education, and is able to communicate in English. *See* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 19-1 at 39. Gray filed his applications for a period of disability, DIB, and SSI payments on November 3, 2016, alleging that his disability began on October 1, 2016. Tr. 31. When he applied, he was forty-seven years old, which is defined as a younger individual. Tr. 39. The Commissioner denied his claim initially on April 27, 2017, and upon reconsideration on July 12, 2017. Tr. 31. Gray requested a

hearing, which was held via video before Administrative Law Judge ("ALJ") Jennie L. McLean on April 25, 2018. *Id.* Gray appeared in Wichita Falls, Texas, with his attorney present. *Id.* The ALJ issued her unfavorable decision on December 26, 2018, finding that Gray was not disabled. Tr. 40.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Gray had not engaged in substantial gainful activity since October 1, 2016, the alleged onset date. Tr. 34. At step two, she determined that Gray had the severe impairments of a history of aortic root/ascending aorta disease requiring a 1999 and December 2016 valve replacement, and a December 2016 sternum wound/flap procedure. *Id.* At step three, the ALJ found that Gray's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404(p). *Id.* In particular, she concluded that Gray retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that involving more than occasionally lifting 10 pounds and frequently less than 10 pounds; no overhead reaching bilaterally; sitting 6 hour during an 8-hour workday; standing/walking 2 hours during an 8-hour workday; occasionally climbing stairs and ramps; stooping, kneeling, crouching, and crawling; and no climbing ladders, ropes, and scaffolds.

Tr. 35. At step four, the ALJ determined that Gray was unable to perform any past relevant work, which included being a livestock farm worker, deputy sheriff, and well service floor worker. Tr. 38. At step five, the ALJ determined that there were a significant number of jobs in the national economy that Gray could perform, so a finding of "not disabled" was appropriate. Tr. 39.

The Appeals Council denied review on September 9, 2019. Tr. 7. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197-98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.   ANALYSIS

Gray raises one issue on appeal. He claims that substantial evidence did not support the ALJ's decision that discounted the opinions of Larry Boyd, M.D. ("Boyd") and Danny R. Bartel, M.D. ("Bartel") "for reasons not supported by substantial evidence." ECF No. 21 at 17.

### A. The ALJ properly considered the opinions of Drs. Boyd and Bartel.

Gray argues that the ALJ did not properly consider the opinions of Drs. Boyd and Bartel when determining his RFC. *Id.* He contends that the ALJ concluded that "Dr. Boyd and Dr. Bartel are entitled to limited weight" without any substantial evidence to support conclusion and thus substituted her own lay opinion regarding his limitations for theirs. *Id.* at 18. Specifically, Gray claims that the ALJ's reasoning such as the "statements/assessments" of Gray's other treating physicians contradict Boyd and Bartel's opinions, and the ALJ's failure to consider the actual basis for their opinions is not a proper reason to discount them. *Id.* at 18, 22. Gray argues that his other treating physicians' statements that he should start lifting weights and become more active cannot discredit Boyd and Bartels' opinion regarding how much Gray can lift in a workday since the other physicians' statements do not mention how long without interruption or during an eight-hour workday he can lift weights. *Id.* at 19. Additionally, Gray contends that the ALJ did not consider the basis for Boyd and Bartel's opinions and therefore did not "conduct a proper evaluation of the consistency and supportability factors set forth in 20 C.F.R. § 404.1527(c)(3) and (4)." *Id.* at 22-24.

In response, the Commissioner argues that the ALJ properly rejected the unsupported opinions of Boyd and Bartel as both doctors completed a "check-box form" that did not include their findings during Gray's physical examination or following objective testing. ECF No. 23 at 3. The Commissioner contends that neither doctor explained how any of his diagnoses related to findings about Gray's alleged limitations or include any findings to support his assessments. *Id.* The Commissioner argues that the ALJ properly discounted their opinions because district courts in the Fifth Circuit have held that substantial evidence supports such an action when, as with Boyd and Bartel, the physician completed a checklist form without any narrative supporting clinical

findings. *Id.* at 4 (citing *Segovia v. Astrue*, No. H-11-0727, 2012 WL 948815, at *17 (S.D. Tex. Mar. 2, 2012), *rec. adopted*, 2012 WL 951543 (S.D. Tex. Mar. 19, 2012)); see also *Gannon v. Astrue*, No. 3:07-cv-1057-N, 2008 WL 4490738, at *14 (N.D. Tex. Oct. 3, 2008). Additionally, the Commissioner argues that neither of them treated Gray for any residual issues stemming from his sternotomy dehiscence. ECF No. 23 at 4-5. Boyd was Gray's primary care physician who saw him for general matters, and Bartel is a neurologist who treated him for back pain. The Commissioner contends that the ALJ correctly discounted their opinions in the face of other opinions from Gray's treating cardiologist, Monte Slatton, M.D. ("Slatton"), and plastic surgeon, Sumeet Soral Teotia, M.D. ("Teotia"), both of whom concluded that Gray was not as limited as Boyd and Bartel stated. *Id.* at 6 (citing *Newton*, 209 F.3d at 455 ("the opinion of a specialist generally is accorded greater weight than that of a non-specialist.").

By definition, a claimant's RFC is the most the claimant can still do despite his impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). "The responsibility for determining a claimant's RFC lies with the ALJ . . . [and] the ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Ewing v. Colvin*, No. 4:13-cv-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). "The ALJ is not required to incorporate limitations in the RFC that [s]he did not find to be supported in the record." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).

Nor must the ALJ expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422-23 (5th Cir. 2008) (per curiam)). "The RFC assessment

6

must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 404.1545.

In determining physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* § 404.1545(b). The ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d). An ALJ "generally cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion. Failure to explain the rejection of a medical opinion justifies a remand." *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759-61 (5th Cir. 2017)).

Gray asserts that the ALJ determined that Boyd and Bartel's opinions were entitled to limited weight on the issue of how much Gray could lift within a workday without any substantial evidence to support her decision. ECF No. 21 at 17-18. When determining the extent of a claimant's ability to do physical and mental work activities, the ALJ must consider medical opinions together with the rest of the relevant evidence in the record. 20 C.F.R. § 416.945(a)(3). Gray has not shown a lack of credible evidence or medical findings that support the ALJ's RFC finding. Gray argues that the ALJ erred by discrediting Boyd and Bartel's opinions as the opinions by Slatton and Teotia do not contradict them due to a lack of specificity. ECF No. 21 at 17-19. However, it is the claimant who bears the burden of presenting evidence of disability, and the ALJ's duty is to develop all relevant facts. *See Audler*, 501 F.3d at 448; *Sun v. Colvin*, 793 F.3d

7

502, 509 (5th Cir. 2015). To upset the ALJ's decision, the claimant must show that there was insufficient evidence for a reasonable person to reach the same conclusion as the ALJ, not that some contradictory evidence might exist. *Newton*, 209 F.3d at 453.

The ALJ did not wholly ignore Boyd and Bartel's medical opinions. Instead, she found that the medical record did not support a determination that Gray had totally disabling impairments due to his aortic valve disease and complications associated with healing of the sternum/chest wall flap grafting as they claimed. Tr. 36. Gray's disagreement with the ALJ's RFC does not carry his burden of establishing that no substantial evidence supports the ALJ's determination. Here, the ALJ cited evidence that supports her RFC determination. For example, the ALJ acknowledged Bartel's opinion that Gray "can do no lifting/carrying; limitedly reach and handle; limitedly push/pull; sit 1 hour total during an 8-hour workday and 1/10 hour at one time; [and] stand/walk ½ hour total during an 8-hour workday." *Id.* She also acknowledged Boyd's opinion that Gray "can frequently and occasionally lift/carry 5 pound[s]; limitedly reach; limitedly push/pull; sit 8 hours total during an 8-hour workday and 2 hour[s] at one time in a recliner and must have his legs elevated; [and] stand/walk 2 hours total in an 8-hour workday and 10 minutes at one time." *Id.*

However, the ALJ also considered both Boyd and Bartel's subsequent treatment notes and opinions, in which they did not describe restrictions and limitations consistent with those listed in their April 2018 opinions, or otherwise indicate that Gray was suffering restrictions and limitations consistent with totally disabling impairments. Tr. 38. Instead, their notes consistently described him as not showing any signs of distress, which conflict with their earlier opinions that Gray had totally disabling impairments. *Id.*

Instead of accepting their conclusions regarding Gray's disability status, the ALJ determined that Slatton and Teotia's opinions were more reliable as their medical specialties "deal

8

more directly with the treatment and assessment of the claimant's aortic disease and/or sternum/chest surgery." Tr. 37. Slatton, a cardiologist who treated Gray previously, stated that his sternectomy limits him to lifting, pushing, and pulling no greater than ten pounds. Tr. 36. Slatton did not impose any limitations regarding Gray's ability to reach, sit, stand, walk, or perform postural changes. Tr. 37. In December 2016, Slatton noted that Gray's cardiac status had "remained markedly improved" from his prior observation in October/November 2016. *Id.* Likewise, Teotia, a plastic surgeon, treated and evaluated Gray for his sternum/chest flap grafting. *Id.* In April 2016, Teotia reported that his sternum/chest wall flap grafting was stable, healing, and overall looking well. *Id.* In May 2017, he again reported that Gray was healing excellently and doing very well overall and that he could start lifting weights and being more active. *Id.*

The ALJ also reviewed the medical record and determined that Gray had not developed any recurrent heart valve disease or significant coronary artery disease, irregular heartbeats, congestive heart failure, or other cardiovascular abnormalities. *Id.* Additionally, Gray had not experience recurrent or prolonged episodes of angina, irregular heartbeats, shortness of breath, weakness, syncope, claudication, or peripheral edema. *Id.* The medical record also established that Gray had multiple physical examinations that showed that he had intact cardiovascular functions and good overall physical functions. *Id.* The ALJ also noted that Gray lives with his family and, with limited assistance, takes care of his grooming and personal needs, drives alone, and goes outside daily. Tr. 38.

Accordingly, the ALJ afforded Boyd and Bartel's opinions only limited weight as they were not consistent with the medical records. The ALJ instead gave greater weight to the opinions of Drs. Slatton and Teotia, which she was entitled to do. Reversal of the ALJ's opinion is not required on this point.

> **B.     The ALJ determined that Gray was not disabled based on substantial evidence and therefore was not required to present a specific rationale for denying him a closed period of disability.**

Gray argues further that the ALJ's discounting of Boyd and Bartel's opinions was without good cause because while Gray had some improvements in his health, he was not symptom free. ECF No. 21 at 29. Gray asserts that the ALJ herself recognized that "healing and residual symptoms from the claimant's sternum/chest wall flap grafting have lasted beyond 12 continuous months." *Id.* (citations omitted). However, she did not explain how his healing and residual symptoms conflicted with Boyd and Bartel's opinion, or "at a minimum" why he was not qualified for a closed period of disability. *Id.* Gray contends that the ALJ's failure to explain why he was not entitled to a closed period of disability requires the Court to remand the ALJ's opinion. *Id.*

The Commissioner recognizes that the ALJ noted that Gray's residual symptoms lasted beyond twelve continuous months, but he contends that there is no requirement that a claimant be healed from all procedures to be found capable of engaging in work activity. ECF No. 23 at 7. He further notes Gray did not show that he was disabled at any point or that his medical condition established a period of disability. *Id.* Moreover, the Commissioner argues that to prove a disability, Gray must show that he has a functional impairment that would preclude substantial gainful activity, which he did not prove that his inability to work lasted for at least twelve months. *Id.* at 7-8 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)).

Under the SSA, a claimant is disabled and entitled to benefits if the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A). In a

typical disability case, an application for benefits is decided while the claimant is under a continuing disability with the payments continuing until the Commissioner determines whether to terminate the benefits at a later date. *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002). However, "in a closed period case, the decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Waters*, 276 F.3d at 719 (citations and internal quotations omitted).

The Social Security Administration's policy is "to establish a closed period of disability where the evidence shows that a plaintiff was unable to engage in substantial gainful activity for a continuous period of 12 months[,] [b]ut the claimant is no longer disabled by the time a disability determination is made." *Davis v. Comm'r of Soc. Sec. Admin.*, No. 6:20-cv-00016, 2021 WL 100610, at *2 (E.D. Tex. Jan. 12, 2021) (citations omitted). The Administration typically awards benefits for a closed period of disability when a claimant experiences medical improvement in a previously disabling condition and becomes able to engage in substantial gainful activity. *Teague v. Astrue*, 342 F. App'x 962, 963-64 (5th Cir. 2009) (citing 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(b)(3); *Waters*, 276 F.3d at 719)). The ALJ must present a specific rationale for denying a closed period of disability only in cases of otherwise disabled claimants, who are "denied on the basis of insufficient duration" of the inability to engage in substantial gainful activity. SSR 82-52, 1982 WL 31376, at *1, *3 (1989). "In considering 'duration,' it is the inability to engage in [substantial gainful employment] because of the impairment that must last the required 12-month period." *Frisby v. Comm'r of Soc. Sec.*, No. 13-3119, 2015 WL 1859053, at *5 (W.D. La. Apr. 22, 2015), *aff'd*, 632 F. App'x 226 (5th Cir. 2016) (citing SSR 82-52; *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)). The claimant has the burden to show that he was disabled for a continuous

11

period of twelve months on or before the date that the disability determination was made. *Davis*, 2021 WL 100610, at *2.

In this case, Gray has not shown that he was disabled for a continuous period of twelve months on or before the date that the disability determination was made. The ALJ determined that Gray did not perform any substantial gainful activity since his alleged onset date. Tr. 34. The ALJ noted that "although healing and residual symptoms from the claimant's sternum/chest wall flap grafting have lasted beyond 12 continuous months, the MRSA infections resolved prior to 12 continuous months." *Id.* The ALJ found "that a history [of] January/February and March 2017 episodes of MRSA infection of sternum wound/flap grafting and a history of 2011 and January 2017 CVA have not significantly limited the claimant's ability to perform basic work activities as required by SSR 85-28." *Id.* Gray argues that since the ALJ stated that his healing and residual symptoms lasted "beyond 12 continuous months," he was entitled to a closed period of disability. ECF No. 21 at 29. However, as the Commissioner has stated, just because Gray may have residual symptoms, that alone is not enough to establish a disability, even if the symptoms lasted twelve continuous months. *Johnson v. Sullivan*, 894 F.2d 683, 685 (5th Cir. 1990) (diagnosis alone is not enough to automatically establish existence of a disability; the ALJ just considers it as part of the evidence); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

Additionally, the ALJ did not deny Gray's claim based on insufficient duration of an inability to engage in substantial gainful employment. Instead, the ALJ determined that the medical record showed that Gray's alleged limitations did not significantly limit his ability to perform basic work activities. Tr. 34. Therefore, the ALJ was not required to present a rationale for not awarding a closed period of disability when she found that Gray was not disabled. Accordingly, since the ALJ considered, weighed, and resolved conflicts with the record, and Gray did not identify any

substantial evidence that he was disabled from working for any period of twelve continuous months, reversal of the ALJ's decision on this basis is not required.

## IV. CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Gray has not shown that reversal of the decision is required, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2019) and Fed. R. Civ. P. 72(b)(1) (2019). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on February 3, 2021.

_Hal R. Ray, Jr._
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE